**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **DONNA JOHANSEN CROSS,** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 1:12cv1455** |
| | ) | |
| **PROSPECT MORTGAGE, LLC,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' REPLY BRIEF TO AMERICAN PORTFOLIO'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### Introduction

In making legal arguments based on the world as it would like it to be, defendant American Portfolio ignores the specific obligations of a summary judgment nonmovant long in place in this District and Division in Local Civil Rule 56(B) providing that:

> A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute.

As shown below, American Portfolio has simply ignored its Local Civil Rule 56(B) obligation to include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. It has instead filed a "STATEMENT OF UNCONTESTED MATERIAL FACTS" that does no more than copy and paste twenty-four of Plaintiffs thirty-nine designated uncontested facts. That is the entirety of American's purported Local Civil Rule 56(B) statement. American does not identify therein a single material fact as to which it contends that there exists a genuine issue necessary to be litigated. Its Local Civil Rule

56(B) does not cite a single part of the record relied on to support facts alleged to be in dispute.

Local Civil Rule 56(B) specifically addresses the consequences of failing to comply, as follows:

> In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

Because American Portfolio did no more than copy and paste the facts from Plaintiffs' Motion for Summary Judgment with which American agreed, without "listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute," the Court should assume that facts identified by (Plaintiffs) in their Local Civil Rule 56(B) statement are admitted.

## A.    Plaintiffs' list of undisputed facts has not been disputed by American Portfolio.

The requirements of Local Civil Rule 56(B) are not new. This Court regularly reminds litigants of its requirements and the consequences of noncompliance.  As held by this Court in *Taylor v. CAN Corp*., 782 F.Supp.2d 182, 186, fn. 1 (E.D. Va. 2010) in the context of a defendants' motion for summary judgment, "where defendants identified facts in the record to support their motion for summary judgment, and Taylor failed to cite evidence in the record to dispute those facts, the facts defendants identified are taken as true."  American Portfolio's Opposition does not dispute any of the facts in Plaintiffs' listing of undisputed facts.  Instead American Portfolio states that it adopts the facts as articulated in its Memorandum in Support of its Motion for Summary Judgment.  That memorandum, (Dkt. 84), states that American Portfolio agrees that Facts 1 through 13, 15 and 16, 20 through 26, and 38 and 39 are uncontested. American Portfolio's Opposition memorandum does not dispute facts 14, 17-20, or 26-37, nor does it provide any evidence contrary to those facts.  Thus, the Plaintiffs' listing of undisputed

facts have not been controverted in any way by American Portfolio and are to be taken as true.

**B.**     **Based on the undisputed facts before the Court, the fraud perpetrated upon Donna Cross was fraud in the factum.**

The parties agree that for purposes of the Plaintiffs' Motion for Summary Judgment, the question is whether the fraud that occurred was "fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms" as set forth in Va. Code § 8.3A-305(a)(1).  The core question here is simply whether that status of a loan as a USDA RD guaranteed loan goes to the character or essential term of the loan.

Although American Portfolio argues that Donna Cross had knowledge and reasonable opportunity to learn the character and essential terms of the loan (Dkt. 89, pg. 3, ID#951), American has pointed to no facts by which Donna Cross could have learned that the loan terms had never been approved by USDA RD to be a USDA RD guaranteed loan and was therefore not eligible to be such a loan. On the contrary, the undisputed facts are that her loan was represented as having been approved, and that she was charged $7,950.00 for the receipt of a USDA RD guaranteed loan.

The bare assertion by American Portfolio that the USDA RD guarantee quality of a loan is a benefit solely to the lender, and not to the borrower, is contradicted by the undisputed facts. The plaintiffs wanted a USDA RD guarantee because of the benefit it provided to them.  That benefit included the ability to refinance within the USDA RD program.  (Fact 2).  When they sought to take advantage of this benefit of USDA RD guaranteed loan, the plaintiffs learned for the first time that the loan was not within the USDA RD program and that they were unable to obtain a refinance. (Facts 27 through 32).  Donna Cross was thus denied the benefit of lowering the interest rate to 3.625%.  (Fact 28).

The reference in Paragraph 10 of the Deed of Trust to mortgage insurance has no bearing on the misrepresentation with respect to the character of the loan.  The mortgage insurance referenced in Paragraph 10 of the Deed of Trust discusses mortgage insurance obtained by the lender to which the borrower is not a party.  As shown by Exhibit E accompanying Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment (Dkt. 81-7), the USDA RD guarantee program required an application signed by Donna Cross. (Fact 2).   Donna Cross was required to pay a fee to be part of the USDA RD guarantee program, and for this she was to receive certain benefits, including the ability to refinance.  Thus, although one feature of the USDA RD guarantee program is the inclusion of partial mortgage insurance for the creditor, the USDA RD guarantee program is much more than mortgage insurance solely between the creditor and an insurer.  On the contrary, it is an agreement that includes the borrower, and that addresses who must apply for it, who must pay for it, and who then receives benefits from it.

American Portfolio's citation to *Givens v. Citibank* provides no support for the assertion that the USDA RD guaranteed status of a loan is not part of a loan's "character or essential terms" as used in Va. Code § 8.3A-305(a)(1).  In *Givens*, Judge Cacheris properly dismissed a *pro se* plaintiff's claim that Citibank N.A. committed fraud in the factum because it did not have authority to make a loan for real property in excess of five years and that it "passed on a paper asset for no real value." No facts or law were provided to support the allegations that a national bank could not make and then sell a home loan and these facts are not analogous to the fraud committed by Prospect Mortgage.   The underlying Virginia Supreme Court case, *Sager v. Rawleigh Co.*, 153 Va. 514, 526 150 S.E. 244 (Va. 1929), similarly provides no support. In that case the only reason the guarantor did not know of the character or essential terms of the document was because he did not read it.  Those facts have applicability to the Cross transaction,

where even the settlement agent thought he was closing a USDA RD guaranteed loan (Fact 18, Exhibit U, deposition of Sid Worley, line 10-15)(Dkt. 81-23, pg. 4), and where the closing documents represented that the Cross loan was part of the USDA RD guarantee program (Fact 16).

Similar to the inapplicability of *Givens* and *Sager*, American Portfolio's reliance on *In re Carmichael*, *Revak v. SEC Realty Corp.*, and *Provident Bank* is misplaced. None of these cases involved misrepresentations regarding the character or essence of a loan. *In re Carmichael* considered fraudulent inducements to a transaction rather than a misrepresentation about the nature of the transaction. *Revak v. SEC Realty Corp.* similarly considered fraud claims which were considered baseless, did not go to the very character of the transaction, and were the consequence of the plaintiffs not reading the documents they signed. *Provident Bank* also turned on facts where no misrepresentation was made to the obligors about what they were signing.

On this issue, the question before the Court is "did being part of the USDA RD guarantee loan program go to the character or essential nature of the loan documents signed by Donna Cross?" The Official Comment to this part of Virginia's Uniform Commercial Code states "[u]nder this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms." Donna Cross never intended to take out a loan that was not part of the USDA RD guarantee loan program. As a result of the fraud, she did not know that this was what she was doing. Therefore, her defense runs to American Portfolio even if it is a holder in due course.

**C.      Rescission is proper because Plaintiffs are able to tender the rescission amount and have repeatedly offered to restore American Portfolio to the status quo.**

Plaintiffs agree with Defendant that the remedy of rescission is in the discretion of the Court, and that rescission requires that Plaintiffs be able to put American Portfolio in the position

that it is restored to the status quo.  Defendant's selective quotation of the original cancellation letter and of the deposition testimony of Donna Cross raises no issue of material fact to support American Portfolio's contention that Plaintiffs are unable to do this nor that such an offer has not been made.

        **1.**        **Plaintiffs have repeatedly offered to pay the amount necessary in rescission to restore the *status quo*.**

Defendant American Portfolio improperly uses the November 13, 2012 letter (Dkt. 81-34) to support its false assertion of fact that "[w]hether by their pleadings, or by their statements before or during this case, Plaintiffs have made no effort, and shown no capability or plan, or actually carrying out a rescission of the loan through return of the borrowed funds to APM. From the beginning, in Plaintiffs' letter to Defendants dated November 13, 2012, no plan or ability to carry out rescission was proposed." This asserted fact by American Portfolio shows up nowhere in any LOCAL CIVIL RULE 56(B) separate listing of material facts. Furthermore, as explained below, American Portfolio's factual assertion is contradicted by the letter, by the Complaint, and by the offer that was made directly to American Portfolio to restore it to the *status quo*.

The letter sent on November 13, 2012, Exhibit ff to Plaintiffs' Motion for Summary Judgment (Dkt. 81-34), asked for the rescission remedy by using the term "cancellation."  On page 3, the letter requests the parties' help in processing that cancellation. Given the existence of the various parties, including an original lender and a current holder, restoring the parties to the *status quo* would necessarily require cooperation among the parties. Plaintiffs would not know how much each party is to receive in order to be restored to the *status quo*.  The letter further stated that if processing that cancellation is not agreed, then a lawsuit would be necessary. As set forth in fact 39, that rescission did not occur, and this lawsuit followed.

Contrary to the assertion that no plan has been proposed, page 3 of the letter sets forth a

plan. First, the parties need to work together. In the interim, the monthly payment currently due on the loan will be made in escrow so that no negative credit information should be reported about regarding this transaction. The importance of the credit reporting is stressed.  The letter further states that "[t]he sooner we process the cancellation, the sooner those monthly payments can be made to a lender who will provide her a proper loan on the promised terms." The reference to "a lender" means the lender who will fund the amount necessary to restore the parties to the *status quo*. No one expects that Mr. and Mrs. Cross have hundreds of thousands of dollars in their bank amount. The simple method for processing the rescission is for the total dollar amount to be determined and for Donna Cross then to borrow that money from a lender through a loan secured by a Deed of Trust on her house. For her to be able to borrow money from a lender, her credit cannot be ruined by negative reporting about the Prospect Mortgage loan. At the same time, for her to act consistent with her rescission, she must not make the payments. The solution proposed in the letter is to make those payments in escrow so that a new lender could be found who would fund a loan whereby the parties would then return to the *status quo*. Until the parties get together and agree on the amount to be returned and how much to whom, that loan cannot be obtained.

The next time that Plaintiffs proposed that the *status quo* be restored by Plaintiffs paying the money to do so was in the Complaint. (Dkt. 1)  Paragraph 4 of the Prayer for Relief (pg. 13), asks that the loan be canceled, an adjusted principal balance be computed, and the Deed of Trust marked satisfied in exchange for payment of that adjusted principal balance.  Paragraph 4 asserts how Plaintiffs believe the rescission amount should be calculated, and this method accords with the commonly accepted way to rescind a home loan. *See, e.g.,* 15 U.S.C. 1635(b) and 12 C.F.R. 1026.15(d) regarding the Truth in Lending Act's method for calculating rescission of a home

loan. Therefore, from the very beginning of this lawsuit, Plaintiffs have offered to pay the money necessary to rescind the loan.  To the extent that American Portfolio believes a different method should be used, such position raises a legal issue on how to calculate the rescission amount; it raises no factual issues regarding the plan by Donna Cross to perform rescission.

Finally, after this lawsuit was filed and before the Complaint was served, American Portfolio sent Prospect a letter that showed how much was required to restore American Portfolio to the *status quo.* (Exhibit gg, American Mortgage Repurchase demand to Prospect Mortgage). In this letter, American Portfolio demanded that Prospect Mortgage pay it the amount provided to Prospect by the transaction in which American Portfolio bought the loan. In its Answers to Interrogatories, American Portfolio admitted that this amount was accurate and that Prospect Mortgage never responded to this letter. (Exhibit hh, attached, American Portfolio's Response to Interrogatory #4). American Portfolio knows that Plaintiffs did respond to this information in this letter and offered to buy the loan from American Portfolio for the amount it demanded from Prospect Mortgage.  (Second Declaration of David Cross, Para 4-13; and Exhibit ii, David Cross, deposition, pg 26:4 through 32:1 and 182:5 through 187:2).   Furthermore, the documents provided by Plaintiffs in discovery show the interaction with the chosen lender about the loan necessary to fund the rescission. (Exhibit jj, DC1503-1543, documents regarding loan application to fund offer to American Portfolio).

That American Portfolio decided not to accept Plaintiffs offer to restore the *status quo* by paying it the amount that it demanded from Prospect Mortgage was American Portfolio's own choice. The natural consequence of that choice is that it found itself a defendant in this lawsuit. Within this lawsuit, American Portfolio cannot ask this Court to make a ruling on facts that are not true. Most notably, nowhere in any of its briefing has American Portfolio asserted as a

separate identifiable fact with citations to parts of the record that Plaintiffs made no effort or that they had no plan to perform a rescission. The reason for the absence of such a separately identifiable fact is because the original letter, the Complaint, the efforts in January and February of 2013 to obtain a new loan, the deposition of David Cross, and the documents shared in discovery all show otherwise, making the deficiencies in its purported Local Civil Rule 56(B) statement and in the remainder of its brief understandable while at the same time fatal to its opposition to the entry of partial summary judgment.

**2.    The deposition testimony of Donna Cross raises no material issue of fact that Plaintiffs did not in the past and do not now have the ability to perform their duties under the rescission of the loan.**

Defendant American Portfolio seeks to use one line of Donna Cross's deposition testimony to assert that Plaintiffs are unable to perform on the rescission.  At her deposition on July 9, 2013, Donna Cross truthfully testified that she did not know whether she had "the ability at this time to come up with the funds to rescind the loan." She did not know because David Cross handles such financial matters. (Declaration of Donna Cross filed with Motion for Summary Judgment (Dkt. 81-1), Para. 7-9, and Declaration of David Cross filed with Motion for Summary Judgment (Dkt. 81-2), Para. 6-57, both of which set forth how David Cross handles the finances, and Second Declaration of Donna Cross, Para. 4).

After the deposition of Donna Cross, the parties deposed David Cross and heard his testimony. He specifically explained what his wife did not know earlier in the day. (Exhibit ii, David Cross, deposition, pg. 182:5 through 187:2). Consequently, the fact that Donna Cross did not personally know her financial ability to fund a new loan raises no factual dispute about her ability to do so. American Portfolio knows that such a question is directed to David Cross and was directed to David Cross in his deposition, and American Portfolio knows that he explained

how he knew Plaintiffs could obtain the funds.

Additionally, at the time of her deposition, Donna Cross did not know what amount American Portfolio believes to be the rescission amount, and American Portfolio did not state what amount it meant by the reference to "the funds to rescind the loan." If American Portfolio thinks the funds to rescind the loan are the current payoff shown on its books, the answer is Plaintiffs cannot borrow that amount of money. If American Portfolio agrees with Plaintiffs as to how to properly calculate the rescission amount, the answer is Plaintiffs have the ability to pay the amount they requested in their Complaint. Donna Cross could not possibly answer the question asked at her deposition without the amount being specified.

Finally, at her deposition on July 9, 2013, Donna Cross did not know whether American Portfolio had ruined her credit with negative reporting.  (Second Declaration of Donna Cross, Para. 6).  As shown by facts 27 and 28 of Plaintiffs' undisputed facts, she got very close to closing on a loan in July 2012 to refinance the entire principal balance. So she knew her credit was good at that time to obtain a home loan.  (Second Declaration of Donna Cross, Para. 5).  The November 13, 2012 letter was very clear about the importance of not reporting negative credit information.  When Plaintiffs were trying to obtain a loan to fund their settlement offer to American Portfolio to make it whole, their chosen lender was able to go forward in the process. (Exhibit jj, DC1503-1543, documents regarding loan application to fund offer to American Portfolio).  Specifically, DC1523 of Exhibit jj shows that at that time Donna Cross had an Experian credit score of 697 and was able to move forward in the loan process. After her deposition, Donna Cross learned that American Portfolio had started negatively reporting her loan on her credit and that she could not even qualify for a credit card. (Second Declaration of Donna Cross, Para. 7-9; Exhibit kk, American Express denial).  This dropped her Experian credit

score to 532. (Second Declaration of Donna Cross, Para. 10-11; Exhibit kk, American Express denial).   Fortunately, by using the dispute resolution process provided under the Fair Credit Reporting process, Donna Cross has been able to correct that reporting. (Second Declaration of Donna Cross, Para. 12; Exhibit ll, correction to credit reporting).

Thus, unbeknownst to Donna Cross at her deposition, because of American Portfolio's negative reporting actions against her credit, at that time she did not qualify even for a credit card. With her credit now cleared, she again has the ability borrow money just as she did when she qualified to buy the house, when she was almost to closing on a refinanced loan in July 2012, and when she was getting ready to fund the settlement offer made in early 2013. The Plaintiffs' plan to fund any rescission is simply to do what people do to buy a house, which is borrow the money. David Cross has been the person coordinating such efforts for Plaintiffs and he knows of no barriers to obtaining the funds for a proper rescission amount. (Second Declaration of David Cross, Para. 14-15). As with the way Plaintiffs were going to fund their settlement offer to American Portfolio to make it whole, such funds would come from the amount held in escrow and a loan. (Second Declaration of David Cross, Para. 16).

## CONCLUSION

For the reasons set forth above, American Portfolio has raised no material issue of

disputed fact.  Accordingly, Plaintiffs' Motion for Summary Judgment should be granted.

<div style="text-align: right">

Respectfully submitted,
Donna Johansen Cross
David Cross
By Counsel

</div>

_____s/_____
Dale W. Pittman, VSB #15673
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, VA  23803
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

Thomas D. Domonoske, VSB #35434
461 Lee Avenue
Harrisonburg, VA 22802
540-442-7706
tomdomonoske@earthlink.net

F. Peter Silva, II, VSB #80935
The Gowen Group Law Office PLLC
1325 G Street NW, Suite 500
Washington, D.C. 20005
P: 202-380-9355
F: 202-499-1370
Peter.Silva@gowengroup.com

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of September, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Robert D. Perrow, Esquire
John P. McGuire Boyd, Jr., Esquire
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
P.O. Box 1320
Richmond, VA  23218-1320
*Attorneys for Defendant Prospect Mortgage, LLC*

Elias George Saboura-Polkovotsy
Matthew Allan Ranck
Eccleston and Wolf PC
7240 Parkway Dr., 4th Fl.
Hanover, MD 21076
Telephone: 410.752.7474
Email: ranck@ewdc.com
Email: saboura@ewva.com
*Attorney for Defendant Saratoga Title and Escrow, Inc.*

James G. Smalley, Esq.
Cyron & Miller, LLP
100 N. Pitt Street
Suite 200
Alexandria, VA  22314
*Attorney for American Portfolio*

<div style="margin-left:auto">

_____ s/ _____
Dale W. Pittman, VSB #15673
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, VA  23803
(804) 861-6000
(804) 861-3368 (Fax)
dale@pittmanlawoffice.com

</div>

Page 13