F I L E D

NOV 2 7 2013

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

DONNA JOHANSEN CROSS,      )
     Plaintiff,           )
                        )
     v.                 )        **Case No. 1:12-cv-1455**
                        )
PROSPECT MORTGAGE, LLC, *et al.*,  )
     Defendants.        )
                        )

## MEMORANDUM OPINION

This action by a borrower against a lender of a home loan arose when the borrower learned, for the first time more than two years after closing, that the loan was not, as represented by the borrower, a United States Department of Agricultural ("USDA") guaranteed Rural Development ("RD") loan. Among the various causes of action the borrower asserted in this case was a claim under the Equal Credit Opportunity Act ("ECOA") (15 U.S.C. § 1691) based on the lender's failure to provide the borrower with notice that the lender did not secure the requested loan guarantee, which the borrower claimed was an "adverse action" triggering the ECOA notice requirement (15 U.S.C. § 1691(d)). The lender countered, arguing that the failure to obtain the loan guarantee was not an "adverse action" under the ECOA because the borrower received the loan on the essential terms requested and because the lender was not responsible for the denial of the loan guarantee.

The parties filed cross motions for partial summary judgment on the ECOA claim. For the reasons that follow, the lender's failure to secure the federal loan guarantee was an "adverse action" that required notification under the ECOA. Accordingly, the borrower's motion for summary judgment on the ECOA claim was granted, and lender's motion for summary judgment

1

on the claim was denied. *Cross v. Prospect Mortgage*, 1:12-cv-1455 (E.D. Va., Oct. 25, 2013) (Order). This memorandum opinion records the reasoning in support of the partial summary judgment ruling on the ECOA claim.

## I.

The facts essential to the resolution of the ECOA claim are not disputed. In 2009, plaintiff, Donna Johansen Cross ("Cross"), a Virginia resident, applied for and received from defendant, Prospect Mortgage ("Prospect"), a loan to finance her purchase of the residential property located at 7102 Kelly Road in Warrenton, Virginia. Cross and her husband continue to reside at the property.[1] Prospect, a Delaware corporation with its principal place of business in Sherman Oaks, California, was the original lender for the property at issue, but has since sold the mortgage note, which is now owned by American Portfolio Mortgage Corporation.[2]

The loan Cross applied for from Prospect was a USDA-RD guaranteed mortgage loan. Accordingly, Prospect sought and received from the USDA the required pre-closing conditional commitment to guarantee the loan. Specifically, on March 9, 2010, the USDA issued a Form 1980-18 Conditional Commitment for a Single Family Housing Loan Guarantee for a residential mortgage loan with a principal balance of $397,800 and a 5.0% interest rate. At the 5.0% interest rate, Cross would have been required to pay $5,000 cash at closing. Prior to closing, Cross requested a change in the loan that would finance her closing costs. In response to this

---

[1] Donna Cross's husband, David Cross, was originally a named plaintiff in this case, but he was dismissed as a plaintiff because the Crosses chose to take the home mortgage loan solely in Donna Cross's name. *Cross v. Prospect Mortgage*, 1:12-cv-1455 (E.D. Va., Oct. 18, 2013) (Order).

[2] Although not implicated in the ECOA claim, American Portfolio Mortgage Corporation, the current note-holder, is also named as a defendant in this case because recession is included among the requested remedies. Saratoga Title & Escrow, Inc. the closing agent, was originally named as a defendant, but was dismissed pursuant to a Consent Order. *Cross v. Prospect Mortgage*, 1:12-cv-1455 (E.D. Va., Oct. 18, 2013) (Order).

request, Prospect agreed to finance 100% of Cross's closing costs provided that the mortgage interest rate was increased from 5.0% to 5.375%. Prospect also advised Cross that, in order for the loan to be USDA-RD guaranteed, this change in loan terms required USDA approval prior to closing. Cross accepted the increased interest rate in order to avoid closing costs. Shortly thereafter, Prospect informed Cross that the 5.375% loan was ready to close, and on March 30, 2010, the parties signed the loan documents. Consistent with the parties' understanding that the loan would be USDA-RD guaranteed, Cross, at closing, agreed to pay a $7,956.00 USDA loan note guarantee fee. This $7,956.00 fee was itemized on the HUD-1 form that Prospect provided to Cross at closing.

Discovery disclosed that Prospect never formally sought or received the USDA pre-closing approval of the 5.375% loan required for the guarantee. Discovery further disclosed that in April 2010, shortly after closing, Prospect knew that the USDA would not guarantee Cross's loan because Prospect failed to obtain USDA pre-closing approval of the altered 5.375% interest rate term. Despite knowing that the USDA would not issue a loan guarantee, Prospect never provided notice of this to Cross, pre- or post-closing, nor did Prospect refund the $7,956.00 USDA guarantee fee Cross paid at closing until August 8, 2011, more than a year after closing. Even then, Prospect failed to provide notice to Cross that the refund issued was for the USDA loan note guarantee fee. Instead, Cross's August 15, 2011 monthly mortgage statement merely reflected that $7,956.00 was credited to the loan principal balance, with no indication of the reason for the credit.

Cross learned that her mortgage loan lacked a USDA-RD loan guarantee in July 2012, when she attempted to obtain USDA-RD refinancing from a different bank and was informed that the desired refinancing was not available to her because she did not have a USDA-RD

guaranteed loan. Cross then brought this action, claiming, *inter alia*, that Prospect violated the ECOA by failing to notify her that the USDA declined to guarantee the mortgage loan.

## II.

The summary judgment standard is too well-settled to merit extended discussion, and the parties do not dispute the standard. Summary judgment should not be granted when the non-moving party has "set forth specific facts showing that there is a genuine issue for trial" through "affidavits or as otherwise provided." Rule 56, Fed. R. Civ. P. A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

Congress designed the ECOA to prevent discrimination in lending. To this end, the statute provides, in pertinent part, that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). And with respect to this notice requirement, the statute further provides that "[e]ach applicant against whom *adverse action* is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2) (emphasis added). As courts have recognized, "[t]his notice requirement serves as 'a necessary adjunct to the anti-discrimination purpose of [the ECOA], for only if creditors know that they must explain their decisions will they effectively be discouraged from discriminatory practices.'" *Diaz v. Virginia Hous. Dev. Auth.*, 117 F. Supp. 2d 500, 504 (E.D. Va. 2000) (quoting *Jochum v. Pico Credit Corp.*, 730 F.2d 1041, 1043 (5th Cir.1984)).

4

Although the Fourth Circuit has not specifically identified the elements of an ECOA claim for failure to provide notice of an adverse action to a loan applicant, other circuits have done so and have identified the following four elements:

1)  defendant must be a "creditor,"

2)  plaintiff must be an "applicant" who submitted an "application for credit,"

3)  an "adverse action" must have occurred with respect to plaintiff's credit application, and,

4)  defendant must have failed to provide plaintiff with written notification of the reasons for the adverse action.

*See Madrigal v. Kline Oldsmobile, Inc.*, 423 F.3d 819, 822 (8th Cir. 2005); *Treadway v. Gateway Chevrolet Oldsmobile Inc.,* 362 F.3d 971, 978 (7th Cir. 2004).

There is no dispute as to elements one, two, and four; the facts of the case make clear that Prospect is a "creditor,"[3] that Cross is an "applicant" who submitted an "application for credit,"[4] and that Prospect never notified Cross, pre- or post-closing, that Prospect had not obtained the required pre-closing USDA approval for the guarantee and that the loan was not guaranteed by the USDA. Thus, the sole question presented is whether Prospect's failure to obtain the USDA-RD loan guarantee was an "adverse action" that triggered the ECOA notice requirement.

---

[3] Pursuant to the ECOA regulations, a "creditor" is "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit."  12 C.F.R. § 202.2(*l*).

[4] The ECOA regulations define "applicant" as "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit."  12 C.F.R. § 202.2(e).  Similarly, "application" encompasses "an oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested."  12 C.F.R. § 202.2(f).

**IV.**

The ECOA defines "adverse action" broadly as: "[i] a denial or revocation of credit, [ii] a change in the terms of an existing credit arrangement, or [iii] **a refusal to grant credit in substantially the amount or on substantially the terms requested**." 15 U.S.C. § 1691(d)(6) (emphasis added). Parts [i] and [ii] of this definition do not apply, as it is clear that the USDA's denial of the loan guarantee was not "a denial or revocation of credit" because Prospect granted Cross a loan to finance the purchase of her home, and there is no contention that the parties had an "existing credit arrangement" prior to when Cross applied for a home mortgage loan from Prospect. It is the third part of the definition that is applicable here. Thus, the question presented here is whether Prospect's failure to secure a USDA-RD loan guarantee constitutes "a refusal to grant credit in substantially the amount or on substantially the terms requested" pursuant to 15 U.S.C. § 1691(d)(6).[5] This inquiry involves two essential questions. First, it must be determined whether Prospect's failure to secure the USDA loan guarantee constitutes "a refusal to grant credit," given that the USDA, not Prospect, was the actor with the authority to grant or deny the loan guarantee. The second question is whether a USDA-RD federal loan

---

[5] The Federal Reserve Board implementing regulations repeat the statutory definition verbatim and add an exception. The regulations provide as follows:

> A refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered. 12 C.F.R. § 202.2(c)(1)(i).

Prospect attempts to avoid the notice requirement by arguing that the counteroffer exception applies, citing *Diaz*. *See Diaz*, 117 F. Supp. 2d 500 (construing the 12 C.F.R. § 202.2(c)(1)(i) counteroffer exception and holding that lender's counteroffer for another loan, which borrower accepted, was not an adverse action under the ECOA). Prospect's argument ignores the fact that Prospect's counteroffer to Cross included the USDA-RD loan guarantee; the only change in the terms of the counteroffer was the increased 5.375% interest rate. Therefore, Prospect's reliance on *Diaz* is misplaced.

guarantee is a "term" of the loan such that a loan not accompanied by the guarantee is not "on substantially the terms requested" where, as here, the borrower specifically requested a USDA guaranteed loan.[6]

## A. Whether Prospect's failure to obtain the USDA-RD loan guarantee was "a refusal to grant credit"

Prospect argues that there is no adverse action because Prospect did not "refuse" to grant Cross credit. Rather, Prospect argues that the USDA's refusal to grant the loan guarantee was not within Prospect's control, and thus Prospect did not cause the adverse action. To begin with, Prospect's argument ignores the role that it played in the denial of the loan guarantee. Specifically, Prospect failed to request pre-closing approval from the USDA, an agency requirement. Thus, the argument that the denial of the loan guarantee was wholly beyond Prospect's control is simply wrong. Moreover, Prospect's argument would produce a result contrary to the dual purposes of the ECOA adverse action notice requirement, which Congress described as follows: (i) "a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices," and (ii) "rejected credit applicants will now be able to learn where and how their credit status is deficient. . . . In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake." *Treadway*, 362 F.3d at 977 (*quoting* 147 S. Rep. No. 94–589, 94th Cong., 2d Sess., *reprinted in* 1976 U.S. Code Cong. & Admin. News, pp. 403, 406). To hold that a creditor must notify an applicant of action on her application only where the

---

[6] The full text of the relevant statutory provision reads "in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6). It is undisputed that Prospect granted plaintiff credit in the amount requested, so it remains solely to determine whether or not the loan was "on substantially the terms requested."

7

creditor was 100% responsible for the adverse action is a reading that would thwart the statute's dual purposes. Specifically, this result would first thwart the anti-discrimination purpose of the statute. No discrimination is alleged in this case. Yet assuming, *arguendo*, that either lenders or the USDA were discriminating in decisions to request and to grant loan guarantees, but the lender banks were systematically failing to notify applicants that their loan guarantee requests would be or were denied, then it would "be difficult for [applicants] to . . . determine that [they were ever] the victim[s] of discrimination." *Treadway*, 362 F.3d at 977. Because applicants have no direct contact with the USDA and only interface with the lender, excusing lenders from notifying applicants that their requested USDA loan guarantee has been rejected would plainly undermine the ECOA's antidiscrimination purpose.   Furthermore, Prospect's proposed interpretation would also undermine the ECOA's educational purpose. This is so because where a creditor never informs an applicant that her application for a federal loan guarantee has been denied, "the applicant will never learn about the deficiencies in her credit status and whether there are any errors in her credit report." *Treadway*, 362 F.3d at 978. In sum, the proper reading of the ECOA adverse action notice provision requires a lender to provide notice of an adverse action even where that lender does not ultimately control the cause of the adverse action.

This conclusion is consistent with prior case law on adverse action under the ECOA. In *Treadway*, for example, the Seventh Circuit held that the ECOA adverse action provision required a car dealership to notify an applicant of its decision not to send the applicant's credit application to lenders, even if the car dealership lacks the ability to grant credit itself. 362 F.3d 971 (7th Cir. 2004). Moreover, under the ECOA, "if the dealer forwarded the credit application to a lender and that lender determined that the applicant was not creditworthy, either the lender or the dealer would have to provide notice to the applicant." *Treadway*, 362 F.3d at 976. Thus,

8

*Treadway* makes clear that even where, as here, the entity processing an application for credit does not have complete control over the relevant adverse action, that entity still has a duty to notify the applicant of the adverse under the ECOA. Accordingly, Prospect's failure to obtain the USDA-RD loan guarantee is properly construed as a "refusal to grant credit" pursuant to the ECOA even though Prospect did not have total authority over the decision to grant or deny the loan guarantee. Analysis proceeds next to whether a USDA-RD loan guarantee constitutes a "term" of credit under the ECOA.

## B. Whether the loan lacking the USDA-RD guarantee was granted "on substantially the terms requested"

A determination of whether or not Cross's non-guaranteed loan was granted "on substantially the terms requested" turns on whether or not the USDA-RD loan guarantee qualifies as "term" of credit under the ECOA. There is no controlling circuit authority on this point, and hence resolution of this question must focus on a proper construction of the pertinent statutory provision.

The Merriam-Webster Dictionary defines "terms" when used in this context as "provisions that determine the nature and scope of an agreement: conditions." And the ECOA regulations define "credit" as "the right granted by a creditor to an applicant to defer payment of a debt, incur debt and defer its payment, or purchase property or services and defer payment therefor." 12 C.F.R. § 202.2(j). Combining these definitions, it follows that "terms of credit" are "provisions that determine the nature and scope of an agreement"[7] regarding "the right granted by a creditor to an applicant to defer payment of a debt, incur debt and defer its payment,

---

[7] "Terms," *Merriam-Webster Dictionary*.

or purchase property or services and defer payment therefor."[8]  Given this plain language
construction of a "terms of credit," there is no doubt that the USDA-RD loan guarantee is a term
of credit.  Indeed, any aspect of a loan agreement that has a material effect on credit obligations
or the marketability of the loan must be deemed a "term" of that loan.  Simply put, anything that
materially affects the lender or borrower's decision to enter into a particular loan agreement is a
term of that loan.  Federal loan guarantees clearly have a substantial effect on both lenders' and
borrowers' rights and obligations under a loan agreement.  Loan guarantees affect the
marketability of a loan and the borrower's ability to refinance, as occurred here.  Federal loan
guarantees can also affect the borrower's ability to modify repayment terms, as is frequently the
case with federal student loan guarantees.  Therefore, because the presence or absence of a
federal loan guarantee is material to both a borrower and a lender in the decision to offer or
accept a loan, a guarantee "determine[s] the nature and scope of [a loan] agreement,"[9] and is thus
a term of the loan.

       To conclude otherwise would violate the rule that statutes must be interpreted to avoid
absurd or nonsensical results.  *See Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 243 (4th Cir.
2009); *Treadway*, 362 F.3d at 976.  To hold that a federal loan guarantee is not a "provision[]
that determine[s] the nature and scope of a[] [credit] agreement,"[10] when borrowers specifically
seek out federally guaranteed loans or choose loans with higher interest rates because they carry

---

[8] 12 C.F.R. § 202.2(j).

[9] "Terms," *Merriam-Webster Dictionary*.

[10] *Id.*

a federal guarantee, would be absurd.[11]  Also absurd is Prospect's assertion that denial of a federal loan guarantee is not an adverse action because such guarantees are solely for the benefit of the lender and confer no benefit on the borrower.  Federal loan guarantees clearly produce benefits for borrowers, and hence the denial of those benefits constitutes an action adverse to the borrower's interests.

Accordingly, the USDA-RD guarantee is a "term" of the loan.  Therefore, because (i) the party charged with providing notice need not be the party responsible for the adverse action, and (ii) a federal loan guarantee constitutes a material term of the loan, Prospect's failure to obtain the requested USDA-RD loan guarantee constitutes a "refusal to grant credit . . . on substantially the terms requested."  Thus, Prospect's action qualifies as an "adverse action" triggering ECOA notification requirements pursuant to 15 U.S.C. § 1691(d)(6) and 12 C.F.R. § 202.2(c)(1)(i).

An appropriate Order has issued.

Alexandria, Virginia
November 27, 2013

/s/

T. S. Ellis, III
United States District Judge

---

[11] Although precedent on this question is lacking, the conclusion that a federal loan guarantee constitutes a "term" of a loan is consistent with past case law from this district.  In *Diaz*, the court found that when plaintiffs requested a Federal Housing Administration ("FHA") "Plus," but were ultimately granted a "straight" FHA loan, it was "not a grant of credit 'in substantially the amount or on substantially the terms requested.'"  117 F. Supp. 2d at 504.

11